## GREEN-BEEKMAN CONST. CO. et al. v. McCLINTIC-MARSHALL CO.

No. 18511.   Opinion Filed July 24, 1928.

Rehearing Denied Dec. 24, 1928.

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiffs in error.

Keaton, Wells & Johnston and Gordon, Smith, Buchanan & Scott, for defendant in error.

HEFNER, J. In 1924, the Green-Beekman Construction Company, the plaintiff in error herein and the defendant below, hereinafter called defendant, was a successful bidder on the Walker street viaduct at Oklahoma City. The defendant purchased from the McClintic-Marshall Company, plaintiff below and hereinafter called plaintiff, the structural steel to be used in the construction of the viaduct at a lump sum price in the amount of $85,337, and paid the plaintiff $71,000, and refused to pay the balance or to pay for the paint job and some other smaller items. The defendant contended that a less quantity of steel in poundage had been put into the job than was indicated by the preliminary estimate of the city and county engineers, and it had a parol agreement with the plaintiff whereby the full quantity of poundage expressed in the preliminary estimate would be put into the job, and it placed its bid with the city on a poundage basis.

The plaintiff alleged there was due on the original contract price the sum of $11,085, and $3,455 on account of storage and switching charges, and $3,252 on account of the paint job. The city and county engineers in the preliminary estimate, in describing this class of steel structure, placed the estimate at 1,840,000 pounds.

Attached to the petition of the plaintiff was a copy of the contract between plaintiff and defendant and the material parts necessary to consider herein are as follows:

"The main girders will be shipped in one piece with no field splices. * * * Price. The purchaser shall pay the contractor in funds current at par in New York or Pittsburgh for the said work, labor, services and materials in the sum of $85,337 in the following manner. * * *"

The defendant's contract with the city provided for a price of $.0548 per pound. The defendant alleges the contract between plaintiff and defendant expressed the price of $.0463 per pound. If this allegation be true, the defendant made a clear profit of $.0085 per pound, being the difference between its alleged purchase price with the plaintiff and the price the city agreed to pay it.

These contracts were made upon the preliminary estimate of the engineers. The plaintiff in its written contract agreed to manufacture and construct the steel for the lump sum of $85,337 without reference to whether or not the final estimate increased or decreased the poundage.

Upon final estimate the poundage used in the construction of the viaduct was 1,630,469 pounds, being 209,531 pounds less than the preliminary estimate, and it is this difference in the poundage that occasioned this lawsuit.

The defendant pleads two principal defenses: The one alleges a custom in Oklahoma under which the defendant would be entitled to credit as a less quantity of steel was actually used than was indicated in the preliminary estimate upon which the contract was based. The other was, notwithstanding the fact the defendant purchased the structural steel from the plaintiff in the stated sum of $85,337, the plaintiff knew the defendant had a contract with the city on a poundage basis, and the defendant had an oral agreement with the plaintiff in which it was understood and agreed the plaintiff would manufacture and put into the construction of the structural steel the full amount of the poundage indicated in the engineer's preliminary report. The plaintiff in its reply denied that there was any such custom, and denied there was any such contemporaneous parol agreement.

Upon these issues the jury rendered a verdict for plaintiff in the sum of $14,622.79, and judgment was entered in accordance with the verdict of the jury.

The first error complained of was the admission in evidence by the court of the following question and answer:

"Q. Is there any custom in the steel construction business whereby in case of a lump sum contract for the supplying of the steel work necessary for a job, the lump sum price is adjusted on the completion of the job in accordance with the amount of steel work that actually goes into that job? A. There is no such custom."

The court, over the objection of the defendant, permitted several other witnesses to testify that there was no such custom. The defendant contends this evidence was not based upon any issue in the case, and its effect was to divert the attention of the jury and mislead them.

The defendant pleaded the custom; the plaintiff denied it; the pleadings made it an issue. The proof offered by the plaintiff was not in conflict with any express provis-

ion of the written contract. It was, in fact, in harmony with the written contract. It is true the burden of proving the custom would necessarily rest upon the defendant. The plaintiff, however, assumed the burden of proving there was no such custom, and the defendant did not offer any evidence tending to prove the existence of such a custom. Since this issue was raised by the pleadings, we do not think the trial court committed any reversible error in admitting this evidence. In any event, if it was error, it was harmless because it did not deprive the defendant of any of its substantial rights.

The plaintiff's contract with the defendant was what is known as a lump sum contract. That is to say, it agreed to furnish the structural steel for a certain definite amount without reference to whether or not the poundage, in the final estimate, would be more or less than was expressed in the preliminary estimate of the engineers. The contract of the defendant with the city was on what is known as a unit basis. That is to say, the defendant was to furnish the steel to the city at so much per pound and pipes and fittings at so much per pound without reference to the amount used.

Had there been used in the construction of the viaduct a greater poundage than that expressed in the preliminary estimate of the engineers, the plaintiff would have been bound under its contract to furnish the actual poundage without any additional charge. The defendant's contract with the city, however, was different. If more poundage was used, then it would receive the additional pay therefor. If less poundage was used, the proper deduction would be made at the price per pound agreed upon between the defendant and the city.

The defendant had the option to furnish the city and county the steel girders of certain dimensions and weight and either "shop" or "field" spliced. The girders could be manufactured either in one piece or two pieces. If they were manufactured in two pieces and shipped to the place where they were to be used, and then put together, this would be what is known as "field spliced", and if manufactured in one piece, it was "shop spliced." The defendant, however, exercised its option not to have the girders field spliced, and when the contract was drawn with plaintiff it was provided "the main girders will be shipped in one piece with no field splices." It is over this provision of the contract that the real controversy in this lawsuit occurs.

The defendant contends that, at the time the contract was executed, it had an oral agreement with the plaintiff whereby it was to manufacture the structural steel for the viaduct, and that when so manufactured, it was to have the weight and tonnage of 1,840,000 pounds. The defendant's contract with the city and county was on a unit basis. Under this contract, in the final estimate of the engineers, the amount of steel used might be reduced, or it might be increased as the necessity and good engineering might demand.

In other words, defendant's contention is that it had a parol agreement with the plaintiff to the effect that if, on the final estimate in the construction of the viaduct, the amount of steel should be reduced, the steel that was manufactured should be increased in poundage so that the poundage used would be 1,840,000 pounds. In the final estimate the poundage was reduced approximately 210,000 pounds. The defendant contends the plaintiff should have put this additional poundage into the structural steel that was used.

The city and the county, in the protection of the public interest, entered into a contract upon a unit basis. The defendant sold to the city on a unit or poundage basis. The defendant could have purchased from the plaintiff on the unit price per pound if it had so desired, but it did not do so. If there was an oral agreement as contended for by the defendant, and it had been carried out, the public would have been compelled to pay for approximately 210,000 pounds of dead weight steel. Such an agreement would be against public policy, illegal and void. Such an oral agreement would also be contrary to the written contract which provided that the plaintiff would furnish the steel required to build the viaduct according to plans and specifications and for the price of $85,337. The oral agreement would nullify the written contract, and would be contrary to section 5035, C. O. S. 1921, which is as follows:

"The execution of a contract in writing whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

The defendant also contends that the expression in the contract, "the main girders will be shipped in one piece with no field splices," is ambiguous and reasonably capable of different interpretations; and being ambiguous, it was proper for the trial court to receive testimony to show the oral agree-

ment the plaintiff had with the defendant. The language of the above clause seems to be plain, clear and unambiguous, and does not require or permit oral explanation in order to make its terms more certain. The only uncertainty about the provision was whether or not the girders should be manufactured in one piece or two pieces before shipping to Oklahoma City. This was made certain by the contract when it provided they should be manufactured in one piece, and the number and dimensions of the girders were fixed by the engineers.

The defendant says there was error in the assessment of the amount of recovery, the same being excessive, not supported by the evidence, and being contrary to the instructions of the court. The verdict of the jury was in the sum of $14,622.79. The causes of action claimed by the plaintiff were as follows:

| | |
|---|---|
| Balance due on contract | $11,085.00 |
| With interest from Oct. 1925 to date of delivery | 665.00 |
| Paint job | 3,252.00 |
| Interest from April 3, 1926, date of approval | 97.00 |
| Storage and switching charges | 3,455.00 |
| Total | $18,554.00 |

Several of the smaller items were contested, and the jury evidently allowed defendants a set-off of some $4,000, because the verdict was returned in the lump sum of $14,622.79. The defendant has not shown that the jury in its verdict allowed the switching and storage charge of $3,455. Plaintiff's total claim was $18,554. The verdict was $14,622.79, leaving a difference of $3,931.21, which was not allowed by the jury. The burden is on defendant to show the switching and storage item was allowed by the jury, and that error was committed in doing so. This has not been shown.

The judgment of the trial court is affirmed.

MASON, V. C. J., and LESTER, HUNT, and RILEY, JJ., concur.